**Exhibit 1**

6/24/2004                                            Mary Sarojak

Page 1

1              UNITED STATES DISTRICT COURT

2                DISTRICT OF CONNECTICUT

3                                        COPY

4        ---------------------------------)

5     MARY SAROJAK,                        )

6              Plaintiff,                  )   Docket No.

7     VS                                   )   3:03CV1050(DJS)

8     THE METALLICS GROUP D/B/A,           )

9     METALLICS, INC. and F. MICHAEL       )

10    MOLA,                                )

11             Defendants.                 )

12       ---------------------------------)

13

14

15           DEPOSITION OF:  MARY SAROJAK

16           DATE:           JUNE 24, 2004

17           HELD AT:        RYAN & RYAN, LLC

18                           900 CHAPEL STREET

19                           NEW HAVEN, CONNECTICUT 06510

20

21       Reporter:  Nadine M. Castonguay, RPR, LSR

22          BRANDON SMITH REPORTING SERVICE

23                44 Capitol Avenue

24            Hartford, Connecticut 06106

25                 (860) 549-1850

2b6112f4-d894-4ced-be37-fe460f7e4c92

Sarojak v. The Metallics Group

6/24/2004                                                    Mary Sarojak

Page 116

```
  1    Defendant's Exhibit 15 Marked...................109

  2                    STATE OF CONNECTICUT

  3

  4         I, Nadine M. Castonguay, a Registered Professional
       Reporter/Commissioner within and for the State of
  5    Connecticut, do hereby certify that I took the deposition
       of Mary Sarojak, on June 24, 2004, at Ryan & Ryan 900 Chapel
  6    Street, New Haven Connecticut.

  7

  8         I further certify that the above-named deponent was by
       me first duly sworn to testify to the truth, the whole truth,
       and nothing but the truth concerning his/ her knowledge in the
  9    matter of the case of Sarojak vs. Metallics, etc now pending in
       the United States District Court, District of Connecticut.

 10

 11         I further certify that the within testimony was taken
       by me stenographically and reduced to typewritten form under
 12    my direction by means of COMPUTER ASSISTED TRANSCRIPTION;
       and I further certify that said deposition is a true record of
 13    the testimony given by said witness.

 14

 15         I further certify that I am neither counsel for, related
       to, nor employed by any of the parties to the action in which
       this deposition is taken; and further, that I am not a relative
 16    or employee of any attorney or counsel employed by the parties
       hereto, nor financially or otherwise interested in the outcome
 17    of the action.

 18

 19         WITNESS my hand and affixed my seal this 1st day of
       July, 2004.

 20

 21

 22                          /s/ [ John C. Bradly ]
                             ---------------------------
 23                          Nadine M. Castonguay, RPR

 24

 25    My Commission expires
```

Brandon Smith Reporting

2b6112f4-d894-4ced-be37-fe460f7e4c92

Sarojak v. The Metallics Group

Mary Sarojak

Page 81

1    I believe?

2        A    Yes.

3        Q    And the notice indicated that you were

4    being let go because your job was being

5    eliminated?

6        A    Yes.

7        Q    And what was Judy's demeanor like in

8    that meeting?  Was she professional?

9        A    Yes.

10       Q    And then what happened?

11       A    I went to my office and packed up my

12   things and I left.

13       Q    Was Mr. Sobczak employment's separated

14   on the same day?

15       A    Yes.

16       Q    Did you leave the building with

17   Robert Sobczak?

18       A    I didn't leave the building with

19   him, no.

20       Q    Did you talk to him after you left?

21       A    The same day.

22       Q    Any day, did you talk to him that day?

23       A    No.

24       Q    When was the first time you talked to

25   him after your employment was separated?

Sarojak v. The Metallics Group

6/24/2004                                                                      Mary Sarojak

Page 82

```
 1        A      I don't recall.

 2        Q      Do you recall what you talked about

 3   when you talked to him?

 4        A      We spoke about getting let go from

 5   Metallics.

 6        Q      And was he angry about being let go?

 7        A      Yes.

 8        Q      And did he tell you that he was going

 9   to get back at the company?

10        A      No.

11        Q      What did he tell you about being

12   let go?

13        A      That he was angry.

14        Q      What did he say about you being let go?

15        A      He was also angry that I was let go.

16        Q      You mentioned before that you had a

17   very good relationship with Robert Sobczak?

18        A      Yes.

19        Q      Unlike Andre and Charles, you talked to

20   him about very personal things?

21        A      We spoke on a personal level, yes.

22        Q      Did you ever socialize with

23   Robert Sobczak outside of working hours?

24        A      Yes.

25        Q      Where would you socialize with Robert?
```

2b6112f4-d894-4ced-be37-fe460f7e4c92

Sarojak v. The Metallics Group

6/24/2004

Mary Sarojak

Page 83

1       A       I recall a couple of times, several of

2    us met out for a couple of cocktails.

3       Q       And when you say "several of us,"

4    employees of Metallics?

5       A       Yes.

6       Q       Who were those employees?

7       A       Oh, I don't recall.  I just don't

8    recall their names, but we would all meet out.

9       Q       Did you ever meet out with Robert by

10   himself just Robert and you?

11      A       No.

12      Q       Never?

13      A       No, never.

14      Q       How about since your employment ended

15   at Metallics, have you met with Robert just the

16   two of you?

17      A       No, I haven't seen him since.

18      Q       Have you talked to him since?

19      A       I spoke to him on the phone a couple of

20   times, yes.

21      Q       And what did you speak to him about?

22      A       His current job, general life things.

23      Q       Have you spoken to him regarding this

24   lawsuit?

25      A       A few times, yes.

2b6112f4-d894-4ced-be37-fe460f7e4c92

6/24/2004                                                                Mary Sarojak

Page 84

```
 1        Q       And what have you spoken about?

 2        A       That I hired an attorney for what

 3    happened during the sales meeting of the skit.

 4        Q       And what was his response to that?

 5        A       He didn't have too much of a response.

 6        Q       No response?

 7        A       He understood.

 8        Q       Understood what?

 9        A       Why I was doing this.

10        Q       Did he say he would help you?

11        A       With regard to this issue?  If I needed

12    his help, yes.

13        Q       And how would he help you?

14        A       It never has come up yet.

15        Q       You haven't discussed with him how he's

16    going to help you with the lawsuit?  His name is

17    one of your witnesses.

18        A       Yes.

19        Q       So how do you think he will help you

20    with this lawsuit?

21        A       He's going to help me with regard to

22    that he witnessed what happened that day.  And

23    that I have complained several times.

24        Q       And anything else?

25        A       That I recall, no.
```

2b6112f4-d894-4ced-be37-fe460f7e4c92

 1       Q      So it's your understanding he will

 2   testify to the skit and that you complained about

 3   the skit?

 4       A      Everything else that led up to my

 5   termination, yes.

 6       Q      Did you discuss with him everything

 7   else that led up to your termination?

 8       A      No, he already knew.

 9       Q      He didn't discuss his perspective on

10   what happened leading up to your termination?

11       A      No.

12       Q      No?  He never had a discussion?

13       A      We had discussions but he never told me

14   what he thought.

15       Q      Do you know what he thinks?

16       A      No.

17       Q      Do you realize you're under oath?

18       A      Yes.

19       Q      You don't know what he thinks about

20   what happened leading up to your termination?

21       A      He thinks it's wrong, what happened.

22       Q      Weren't you part of a meeting with an

23   investigator in which Mr. Sobczak testified?

24       A      Yes.

25       Q      So you do know what he thinks?

2b6112f4-d894-4ced-be37-fe460f7e4c92

Page 87

1      Q     Did you give Mr. Sobczak's number to

2   your attorney?

3      A     Yes, I believe I gave my attorney

4   Mr. Sobczak's number, but I don't know who

5   called who.

6      Q     To the best of your knowledge, do you

7   know if they spoke?

8      A     I would think they did.

9      Q     You know they did?

10      A     I don't recall.

11      Q     You would think they did, and then you

12   don't recall.  But you know they did, correct.

13          MR. FORTGANG:  If you don't understand

14   that -- I don't even understand it -- don't answer

15   it.

16      Q     Which is it?  You don't recall or you

17   think they did or you know they did?

18          MR. FORTGANG:  Objection as to form.

19   Now, if you understand that you can try?

20      A     I don't understand the question.

21      Q     You think that your attorneys -- your

22   attorney spoke with Mr. Sobczak?

23      A     At some point, I think they did.

24      Q     And which attorney spoke with Mr.

25   Sobczak:  Mr. Frangie or Mr. Fortgang?

2b6112f4-d894-4ced-be37-fe460f7e4c92

Sarojak v. The Metallics Group

6/24/2004                                                                    Mary Sarojak

Page 88

1        A        I gave Mr. Frangie Robert Sobczak's

2    work number.

3        Q        Okay.  And you believe that Mr. Frangie

4    called Mr. Sobczak and spoke with him?

5        A        I don't know who called who.

6        Q        But you believe they spoke?

7        A        I believe they did.

8        Q        Okay.  That wasn't so hard.

9                 MR. RYAN: I would like to mark this

10   as an exhibit.

11                (Whereupon, Defendant's Exhibit

12   No. 8 was marked for identification.)

13                MR. RYAN:  Nice.

14                MR. FORTGANG:  Nice what?

15   BY MR. RYAN:

16       Q        Can you turn to the second page of this

17   exhibit.  This page reflects the number of sick

18   hours that you took from the company you used and

19   vacation hours between January 1, 2000 and

20   September 12, 2000.  Is that what you understand

21   it to indicate also?

22       A        Yes.

23       Q        Now, if you look at this between

24   February 4 of 2000 and September 12 of 2000, I

25   believe there are fifteen occurrences of sick

2b6112f4-d894-4ced-be37-fe460f7e4c92

Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARY SAROJAK, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 3:03 CV 1050 (DJS) |
| | : | |
| V. | : | |
| | : | |
| | : | |
| THE METALLICS GROUP D/B/A | : | |
| METALLICS, INC. AND F. MICHAEL MOLA, | : | |
| Defendants. | : | AUGUST 9, 2004 |

## AFFIDAVIT OF JENNIFER VINCENT

The undersigned being duly sworn, hereby deposes and says:

1. I am over the age of eighteen (18) and I believe in the obligations of an oath.

2. I am a paralegal in the office of Ryan & Ryan, LLC.

3. The law office of Ryan & Ryan, LLC requested and received a copy of the tape recording of a fact finding hearing in Sarojak v. The Metallics Group, CHRO No. 0130600, held before the Commission of Human Rights and Opportunities on May 1, 2003.

4. I thereafter transcribed the tape and the following is a true and accurate excerpt from the tape of inquiry by the CHRO and Attorney Fred Frangie counsel for the Plaintiff Mary Sarojak of Robert Sobczak:

CHRO:      Which meeting?

Attorney:      The one that he had with the attorney.

CHRO:      Ok.

Attorney:      I would like to know exactly what happened at that
meeting. I don't believe we're, we're infringing on attorney
client privilege because he was part of it.

CHRO:      Ok.

Attorney:      Am I right? What do you think?

CHRO:      I don't know, you're the attorney here.

Attorney:     Yeah I know but I always err on the side of making sure that we are not, we're not uh.  What happened at that meeting where...?

5.  The term "CHRO" refers to the CHRO investigator during the May 1, 2003 hearing and the term Attorney refers to Fred Frangie the Plaintiff's counsel.

6.  Later in the tape, Mr. Sobczak refers to the Plaintiff's counsel as "Fred" as set forth in detail below:

CHRO:  Oh, would you be able to....find out who it was doing Mary's job right after she left?

RS:     Yes, I could do that and I will be able to get back to uh Fred with that information in the next couple of days, I would have no problem doing that.

Jennifer Vincent

Subscribed and sworn to before me
this _____ day of August, 2004.

Holly Quackenbush Darin
Commissioner of the Superior Court

Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY SAROJAK,<br>Plaintiff<br><br>V.<br><br>THE METALLICS GROUP D/B/A<br>METALLICS, INC. AND F. MICHAEL<br>MOLA<br> Defendants | CIVIL ACTION<br>NO. 3:03 CV 1050 (DJS)<br><br><br><br><br><br>NOVEMBER 19, 2003 |

## PLAINTIFF'S INITIAL DISCLOSURES

Pursuant to Rule 26 (a) (1) of the Federal Rules of Civil Procedure, the Plaintiff through counsel, provide the following initial disclosures:

(A)    The name and, if known, the address, and telephone number of each individual likely to have discoverable information that the disclosing party may use to supports it's claims or defenses, unless solely for impeachment, identifying the subjects of the information.

1.    **F. Michael Mola, Metallics, Inc., 229 Cross Street, Bristol, Connecticut, 06110, (860) 589-4186.**

2.  **Judy Couture, 24 Birge Road, Bristol, Connecticut, 06010, (860) 583-9117.**

3.  **Judy Couture's daughter, address unknown**

4.  **Robert Sobczak, 229 Cross Street, Bristol, Connecticut, 06110, (860) 589-4186.**

5.  **Mary Sarojak, 142 Wolcott Street, Bristol, Connecticut,**

6.  **Andre Evans, address unknown**

*UNITED STATES DISTRICT COURT*
*DISTRICT OF CONNECTICUT*

| | | |
|---|---|---|
| MARY SAROJAK,<br>        Plaintiff | : | CIVIL ACTION<br>NO. 3:03 CV 1050 (DJS) |
| V. | : | |
| THE METALLICS GROUP D/B/A<br>METALLICS, INC. AND F. MICHAEL<br>MOLA | : | |
|         Defendants | : | NOVEMBER 19, 2003 |

## PLAINTIFF'S INITIAL DISCLOSURES

Pursuant to Rule 26 (a) (1) of the Federal Rules of Civil Procedure, the Plaintiff through counsel, provide the following initial disclosures:

(A)     The name and, if known, the address, and telephone number of each individual likely to have discoverable information that the disclosing party may use to supports it's claims or defenses, unless solely for impeachment, identifying the subjects of the information.

1.     F. Michael Mola, Metallics, Inc., 229 Cross Street, Bristol, Connecticut, 06110, (860) 589-4186.

2.  Judy Couture, 24 Birge Road, Bristol, Connecticut, 06010, (860) 583-9117.

3.  Judy Couture's daughter, address unknown

4.  Robert Sobczak, 229 Cross Street, Bristol, Connecticut, 06110, (860) 589-4186.

5.  Mary Sarojak, 142 Wolcott Street, Bristol, Connecticut,

6.  Andre Evans, address unknown

Exhibit 4

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARY SAROJAK,              :       CIVIL ACTION
          Plaintiff,            :       NO. 3:03 CV 1050 (DJS)
                                   :
V.                               :
                                     :
THE METALLICS GROUP D/B/A       :
METALLICS, INC. AND F. MICHAEL MOLA,   :
          Defendants.       :       AUGUST 9, 2004

### AFFIDAVIT OF WILLIAM A. RYAN

The undersigned being duly sworn hereby deposes and says:

1.   I am over the age of eighteen (18) and I believe in the obligations of an oath.

2.   I am a partner in the firm of Ryan & Ryan, LLC.

3.   I represent the Defendants Metallics Group d/b/a Metallics, Inc. ("Defendant Metallics") and F. Michael Mola in the above referenced matter and represented the Defendant Metallics in an action brought by the Plaintiff Sarojak before the Commission on Human Rights and Opportunities ("CHRO") entitled Sarojak v. The Metallics Group, CHRO No. 0130600.

4.   Even though I filed both an appearance and an answer on behalf of the Defendant Metallics in the CHRO matter, neither I nor the Defendant Metallics, was invited to or aware of a fact finding meeting held on May 1, 2003 before CHRO investigator Kathleen Bowden Garassino.

5.   I subsequently learned that a fact finding meeting had taken place and that Robert Sobczak, a former member of management for the Defendant Metallics, was asked by Plaintiff Sarojak's attorney Fred Frangie to testify about attorney-client privileged communications which occurred during a meeting held between myself and the management group of the Defendant Metallics in which the Defendant Metallics had sought legal advice relating to the Plaintiff Sarojak's employment.

6.   I thereafter contacted Attorney Fred Frangie regarding his ex parte communications with Mr. Sobczak and improper solicitation of attorney-client privileged information. I also spoke with Attorney Robert Fortgang regarding said communications.

7.   Both Attorney Frangie and Attorney Fortgang advised me that they did not believe that they had done anything that was improper.

William A. Ryan

Subscribed and sworn to before me
this _____ day of August, 2004.

Holly Quackenbush Darin
Commissioner of the Superior Court

2