**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARY SAROJAK | CIVIL ACTION NO. |
| PLAINTIFF, | 3:03CV1050 (DJS) |
| V. | |
| THE METALLICS GROUP D/B/A METALLICS, INC. and F. MICHAEL MOLA | |
| | AUGUST 13, 2004 |
| DEFENDANTS. | |

**DEFENDANTS' MEMORANDUM OF LAW**

**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.    FACTUAL[1] AND PROCEDURAL BACKGROUND**

On December 15, 1999, the Plaintiff, Mary Sarojak (hereinafter "Plaintiff Sarojak"), commenced employment with the Defendant Metallics Group d/b/a Metallics, Inc. (hereinafter "Defendant Metallics") as a Purchasing Agent. See Affidavit of Richard Paladino attached hereto as Exhibit 1 (hereinafter Paladino Aff.") at ¶ 5.

The Plaintiff Sarojak's supervisor during her employment up to April 3, 2001 was Mr. Robert Sobczak who was Vice President of Operations. Mr. Sobczak was responsible for overseeing the purchasing department in addition to other non-purchasing department duties.  See Excerpts from Deposition of Plaintiff Sarojak attached hereto as Exhibit 2 (hereinafter "Sarojak Deposition") at pp.60 & 71; Paladino Aff. at ¶ 7.

---

[1] The following facts, with the exception of the procedural background, are taken from the Defendants' Local Rule 56(a)(1) Statement.

On March 22, 2001 a National Sales Meeting was held at Metallics for the company's sales representatives located throughout the country.  See Amended Complaint at ¶ 16 ; Paladino Aff. at ¶ 13.  On March 21, 2001, the day before the sales meeting, the Defendant F. Michael Mola ("Defendant Mola") advised the Plaintiff Sarojak she was to be part of an office skit which was to be performed on March 22, 2001 as part of the sales meeting.  See Sarojak Deposition at pp.35-36; Amended Complaint at ¶ 18.[2]  The Plaintiff Sarojak had no problem being part of the skit and agreed to take part in it. See Sarojak Deposition at p. 36.

On March 21, 2001 a rehearsal of the skit was conducted by the Defendant Mola. See Amended Complaint at ¶ 20; Sarojak Deposition at p. 41. The Defendant Mola explained to the Plaintiff Sarojak and the other employees who were going to take part in the skit, that there were going to be skits performed at the sales meetings and that three people would be involved in each skit.  See Sarojak Deposition at p. 39.

With respect to the individuals involved in the first skit to be performed, including the Plaintiff Sarojak, the Defendant Mola told them that he was going to perform a speech and they would be each be holding a bunny and the bunnies were to be called the "Metallics Playboy Bunnies."  See Sarojak Deposition at pp. 39-40.

The Defendant Mola then instructed the individuals involved in the first skit to place their bunnies on the table, turn them on and watch the bunnies bounce around.  See Deposition of Sarojack at pp. 46-47. The Plaintiff Sarojak thought this skit was silly and

---

[2] At the time, The Defendant Mola was Chairman of the Defendant Metallics and the Plaintiff Sarojak had only seen him approximately four times during her employment with the Defendant Metallics.   See Paladino Aff. at ¶ 6; Sarojak Deposition at p. 35.
¶ 6; Sarojak Deposition at p. 35.

laughed and joked about the skit when the rehearsal was done.  See Sarojak Deposition at p. 41.

The sales meeting on March 22, 2001, including the skits, was videotaped by the Defendant Metallics.  See Paladino Aff. at ¶14; Videotape attached hereto as Exhibit 6. During the first skit on March 22, 2001 the videotape reflects that the Plaintiff Sarojak walked out first holding a bunny behind her back followed by three[3] other females doing the same and holding bunnies behind their respective backs.  See Videotape at 00:22:55. All four females placed their bunnies in front of them.  The Plaintiff's bunny was pink, the individual to her right had a white bunny, the next individual had a pink bunny and the last individual had a pink bunny.  Upon placing the bunnies on the table the four females turned the bunnies on and the bunnies hopped up and down and music emanated from them. The entire skit lasts less than a minute and the Plaintiff Sarojak is laughing throughout this skit. See Videotape at  00:22:59 to 00:22:19. The Plaintiff Sarojak did not find this skit offensive.  See Sarojak Deposition at p. 47.

The Plaintiff did not perform in the second skit shown on the videotape which was performed by two African American females in the order processing department. However, in this skit the females held stuffed bears and the Defendant Mola comments, "Notice there's an order in their hand."  The two African American females put their stuffed animals on the table in front of them, turned them on, and danced from side to side in response to the music which came from the bears and were laughing. See Videotape at 00:23:44 to 00:24:14.

---

[3] This differs from the Plaintiff Sarojak's deposition in which she claimed that there were only three individuals in the skit.  See Sarojak Deposition at p. 39.

The Plaintiff Sarojak did perform in the third skit on March 22, 2001 with two African American males named Andre Evans and Charles Gibson who she considered to be her friends.  See Sarojak Deposition at pp. 28, 38.  According to the Plaintiff, the Defendant Mola gave Mr. Evans and Mr. Gibson Scooby-Doos which held jack-hammers. See Sarojak Deposition at p. 28, 42-23.[4] The actual videotape shows that the Scooby Doos were not holding jack-hammers but were standing on pogo sticks. See Videotape.

The third skit began with the Defendant Mola stating, "We have a couple of our Top Dogs coming out here now…what we've got is our Plant Manager Andre Evans and with him Charlie Gibson ..so let's have the "Big Dogs - come on."  See Videotape at 24:19 to 24:32.  Thereafter, contrary to the Plaintiff Sarojak's version of the skit,[5]the two men appeared without the Plaintiff Sarojak, holding the Scooby-Doos behind their backs. One of the individuals then said, "We are representatives from the Shipping Department and we would like to let you guys know that when we get your order we jump." See Videotape at 00:24:33 to 00:24:46.

The two men then placed their Scooby Doos on the table and the other individual said, "May we have a bunny please" and the Plaintiff Sarojak came out and placed a pink bunny on the table. See Videotape at 00:24:47 to 00:24:53.  Once the Plaintiff Sarojak placed her bunny on the table, Mr. Evans and Mr. Gibson turned the Scooby-Doos on so that they jumped up and down on the pogo sticks. One of them then turned on the Plaintiff Sarojak's bunny so that it hopped.  See Videotape at 00:24:54; Sarojak Deposition at pp. 54-55.  Although the Plaintiff Sarojak does not recall whether she

---

[4] The Plaintiff Sarojak acknowledges that she was comfortable being in a skit with Mr. Evans and Mr. Gibson and was comfortable with the Scooby-Doos also.  See Sarojak Deposition at pp. 38, 57-59.
[5] See Sarojak Deposition at p. 52.

stepped back from the table[6], the videotape clearly shows that after placing the bunny on the table she then backed up behind the tow individuals to her sides.  After doing so, her shoulders were indisputably not touching either Mr. Evans or Mr. Gibson.  See Sarojak Deposition at p. 53; Videotape at 00:24:55.  The Plaintiff Sarojak thought this part of the skit was silly also.  See Sarojak Deposition at p. 54.

Thereafter, the Defendant Mola took a Scooby-Doo and put it behind the bunny and one of the other gentlemen (either Mr. Evans or Mr. Gibson), put the other Scooby-Doo in front of the bunny.  See Sarojak Deposition at p. 55; Videotape at 00:25:04 to 00:25:08. The Plaintiff Sarojak laughed after this was done as did Mr. Evans and Mr. Gibson. See Videotape at 00:25:04.

This portion of the skit in which the Scooby-Doos were behind the bunny lasted approximately four (4) seconds. See Videotape at 00:25:04 to  00:25:08; Sarojak Deposition at p. 55.  After the animals stopped bouncing and making noise, the Plaintiff Sarojak along with Mr. Evans and Mr. Gibson picked up the stuffed animals and left the room.  See Videotape at 00:25:16.

After the skit, the Plaintiff Sarojak complained to her supervisor Robert Sobzcak and the next day asked him to discuss the incident with Judy Couture, who was Vice President of Human Resources at that time.  See Sarojak Deposition at p. 61. The Plaintiff Sarojak thereafter met with Judy Couture and Richard Paladino, President of Metallics and told them she wanted the Defendant Mola to apologize for what he did. See Sarojak Deposition at pp. 62-63; Paladino Aff. at ¶¶ 17-18.

---

[6] See Sarojak Deposition at p. 53.

On April 3, 2001 The Defendant Mola apologized on behalf of management,[7] to each participant that may have been upset about his/her participation in the skit.  See Amended Complaint at ¶ 27; Paladino Aff. at ¶ 21; April 3, 2001 Memo attached hereto as Exhibit 7.

On the same day this apology was issued, Mr. Robert Friedli was promoted to the position of Director of Purchasing/Materials Management.  Mr. Friedli had been the Inventory Control Manager for the Defendant Metallics and its sister company, Avanti Screw, Inc. See Paladino Aff. at ¶ 21; Memo dated April 3, 2001 attached hereto as Exhibit 8.

Prior to Mr. Friedli's promotion, the Defendant Metallics' sales had decreased significantly.  Specifically, the sales for the period ending April of 2000 were approximately $4,599,250 and the sales for the period ending April of 2001 were approximately $4,050,027 resulting in a decrease in sales of approximately $549,223. See Paladino Aff. at ¶ 22.

As a result of the decrease in sales, on March 15, 2001, five (5) employees were laid off in the packing area and between March 15, 2002 and May 20, 2001, thirteen (13) employees voluntarily separated employment from Metallics and were not replaced. See Paladino Aff. at ¶ 23.

Mr. Friedli was promoted in an effort to further reduce costs by restructuring the purchasing department overseen by Robert Sobczak which department included the Plaintiff Sarojak as purchasing agent, and to analyze and get control over the inventory situation. See Paladino Aff. at ¶ 24.

---

[7] The April 3, 2001 Memorandum was from "Management" and the Defendant Mola was indisputably a member of management at the time.  See April 3, 2001 Memo attached hereto as Exhibit 7; Sarojak Deposition at p. 64.

As part of Mr. Friedli's new duties as Director of Purchasing/Materials Management, he became responsible for overseeing the purchasing functions of both Metallics, Inc. and Avanti Screw, Inc. After Mr. Friedli's promotion, Mr. Sobczak did not have any responsibilities with Metallics' purchasing department. See Paladino Aff. at ¶ 25.

As a result of Mr. Friedli's promotion, the Plaintiff Sarojak was relocated to a new office across the hall and her new supervisor, Mr. Friedli was moved into her old office. See Paladino Aff. at ¶ 26; Sarojak Deposition at p. 71. The move did not affect the Plaintiff Sarojak's job.  See Sarojak Deposition at p. 79.  The Plaintiff Sarojak's new office was ten (10) to twenty (20) feet across the hall from her old office, it was still in the area of the managers at Metallics, it was twenty (20) or thirty (30) feet from the President of the company, and the Plaintiff Sarojak still had a computer and a phone and could still communicate with co-workers.  See Sarojak Deposition at pp. 72-74, 79.

During the Plaintiff's employment with Metallics, memos were issued to all employees on May 3, 2000 and again on August 18, 2000 reminding employees that no personal calls were to be made or received during company business hours, except for emergency situations and that continuing violations of the policy could result in disciplinary action.  See Memos dated May 3, 2000 and August 18, 2000 attached hereto as Exhibits 4 & 5; Paladino Aff. at ¶ 12; Sarojak Deposition at pp. 65-67. The Plaintiff Sarojak admitted receiving these memos. See Sarojak Deposition at pp 65-67.

Consistent with these prior memos, on April 12, 2001 the Plaintiff Sarojak was counseled for excessive personal phone calls.[8]  See Sarojak Deposition at p. 68; Memo

---

[8]The Plaintiff Sarojak admits making personal phone calls while working at Metallics.  See Sarojak Deposition at p. 66.

dated April 12, 2001 attached hereto as Exhibit 9; Paladino Aff. at ¶ 27. The Plaintiff

Sarojak received no decrease in pay and/or benefits as a result of this counseling. See

Paladino Aff. at ¶ 27.

Shortly after Mr. Friedli's promotion on April 3, 2001, it became evident that he

could perform all the functions of the purchasing department, including the functions of

the Plaintiff Sarojak as purchasing agent, and a decision was made to simultaneously

eliminate both the Plaintiff Sarojak's position as purchasing agent and Mr. Sobczak's

position as Vice President of Operations.  See Paladino Aff. at ¶ 28.

On April 20, 2001 the Plaintiff Sarojak was told by Judy Couture that Metallics

her position was being eliminated and she was given one week's severance pay.

See Sarojak Deposition at p. 80; Paladino Aff. at ¶ 29. During this meeting, Judy Couture

was professional and, after being told of the elimination of her position, the Plaintiff

Sarojak went to her office, packed her things and left. See Sarojak Deposition at p. 88.

Mr. Sobzcak's position as Vice President of Operations was also eliminated the

same day.  See Paladino Aff at ¶ 29. As a result of these eliminations, Mr. Friedli

assumed all of the Plaintiff Sarojak's job functions and Mr. Sobczak's non-purchasing

duties were assumed by Richard Paladino, President of Metallics, and Ms. Judith

Couture, the Vice President of Human Resources. See Paladino Aff. at ¶ 28.

The Plaintiff Sarojak subsequently filed the instant action.  In her Amended

Complaint dated September 5, 2003 she alleges that the Defendant Metallics sexually

harassed and retaliated against her in violation of Title VII of the Civil Rights Act of

1964, as amended (42 U.S.C. Section 2000e et seq.) and the Connecticut Fair

Employment Practices Act (Connecticut General Statutes Section 46a-60 et seq.).  See

Amended Complaint, Counts One, Two,[9] Three and Four.  She further alleges in Counts Five and Six intentional and negligent infliction of emotional distress by the Defendant Metallics.[10] Finally, in Counts Seven and Eight the Plaintiff Sarojak alleges breach of contract and breach of the covenant of good faith and fair dealing contending that an oral contract of  employment existed between herself and the Defendant Metallics under which she could be terminated only for cause. See Amended Complaint, Counts Seven and Eight.

The Defendants hereby move for summary judgment as to all counts of the Amended Complaint on the basis that the above facts demonstrate that there is no genuine issue as to any material fact and the Defendants are entitled to judgment as a matter of law on all counts.

## II.   LEGAL ARGUMENT

### A.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that the court shall grant a motion for summary judgment "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "The determination of what facts are material to a particular claim is made based upon the substantive law upon which that claim rests. . . .  A dispute regarding a material fact is genuine if the evidence is such that a reasonable [factfinder] could return a verdict for the

---

[9] The only substantive difference between Count One and Count Two is that in Count Two the Plaintiff Sarojak alleges that the Defendants acted with malice and thus the Plaintiff Sarojak seeks punitive damages.

[10] The Defendant Metallics filed a Motion to Dismiss Counts Five and Six on or about September 23, 2003 which Motion to Dismiss has not yet been acted upon by the Court.

nonmoving party." (Citations omitted; internal quotation marks omitted.) Grossman v. Computer Curriculum Corp., 131 F.Supp.2d 299, 304-05 (D.Conn. 2000).

The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish the right to judgment as a matter of law. Rodriguez v. City of New York, 72 F.3d 1051, 1060 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir. 1988). Notwithstanding this burden on the moving party, the responding party "may not 'rely on mere speculation or conjecture as to the true nature of facts to overcome the motion.'" Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995)(quoting Knight v. U.S.Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)). "Rather, the responding party 'must show the existence of a disputed material fact in light of the substantive law.'" MacKay v. Rayonier, Inc., 75 F. Supp.2d 22, 25 (D.Conn. 1999)(quoting Peer Int'l Corp. v. Luna Records, Inc., 887 F. Supp. 560, 564 (S.D.N.Y. 1995)).

A recent decision from the District of Connecticut specifically addressed the summary judgment standard in employment discrimination cases:

> In cases alleging employment discrimination, the Second Circuit has held that additional considerations must be taken in to account when deciding whether summary judgment should be granted. . . . In such cases, the trial court must be particularly cautious about granting summary judgment when the employer's intent is at issue, and affidavits and depositions must be scrutinized for circumstantial evidence that, if believed, would support the plaintiff's claim. . . . The Second Circuit, however, has also recently reminded district courts deciding summary judgment motions in discrimination cases that such courts must also carefully distinguish between evidence that allows for a reasonable inference of discrimination

10

> and evidence that gives rise to mere speculation and conjecture.  This
> undertaking is not one of guesswork or theorization.  After all, an
> inference is not a suspicion or a guess.  It is a reasoned, logical decision to
> conclude that a disputed fact exists on the basis of another fact that is
> known to exist. . . .  Thus, the question is whether the evidence can
> reasonably and logically give rise to an inference of discrimination under
> all of the circumstances.

(Brackets omitted; citations omitted; internal quotation marks omitted.)  Ortiz v.

Prudential Insurance Co., 94 F.Supp.2d 225, 230 (D.Conn. 2000).

### B.  ARGUMENT

### 1.  The Defendant Metallics Is Entitled To Judgment On Counts One And Two Alleging Sexual Harassment.

As set forth above Counts One and Two of the Amended Complaint allege hostile

work environment sexual harassment.

Title VII of the Civil Rights Act of 1964 makes it "unlawful employment practice

for an employer….to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. 20000e-2(a)(1).  The

phrase 'terms, conditions, or privilege of employment' evinces a congressional intent 'to

strike at the spectrum of disparate treatment of men and women' in employment," which

includes requiring people to work in a discriminatorily hostile or abusive environment."

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64,  91 L.Ed. 2d 49, 106 S.Ct. 2399

(1986)(quoting Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 707,

n.13, 55 L. Ed. 2d 657, 98 S. Ct. 1370 (1978).

To establish a hostile work environment claim under Title VII, a plaintiff must

first demonstrate that the defendant's conduct was "sufficient severe of pervasive to alter

the conditions of the victim's employment and create and abusive working environment;

11

and 2) a plaintiff must "show a specific basis for imputing the hostile work environment to the employer.

The following factors are relevant to this determination: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and 4) whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S.Ct 367, 126 L.Ed. 2d 295 (1993). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L. Ed. 662 (1998).

A court must consider the totality of the circumstances and in order to be actionable, a sexually objectionable environment must be both objectively and subjectively offensive, one that **a reasonable person would find hostile or abusive**, and one that the victim in fact did perceive to be so. Harris, 510 U.S. at 21-22. (Emphasis added.) The requirement that a reasonable person find the environment hostile or abusive is crucial. Oncale v. Sundowner Offshore Service, Inc., 523 U.S. 75, 81, 188 S.Ct. 998, 140 L. Ed. 2d 201 (1998).

In order to survive summary judgment on a hostile work environment claim, a plaintiff must first show "either that a singe incident was extraordinarily severe, or that a series of incidents were sufficient continuous and concerted to have altered the condition of…[the plaintiff's] working environment." Cruz v. Coach Stores, Inc., 202 F. 3d 560, 570 (2d Cir. 2000).

In the instant case, the conduct alleged to be harassing[11] is a four (4) second portion of the third skit, involving a pink bunny and two Scooby-Doos. *Assuming arguendo* that the Plaintiff Sarojak herself found this to be abusive and hostile[12], under the factors set forth in Harris, it is not conduct that a reasonable person would find hostile or abusive.

First, with respect to its frequency, the alleged harassing conduct involves a single incident. By the Plaintiff's own admission, the four (4) second portion of the third skit on March 22, 2001, which the Plaintiff Sarojak found offensive, is the only incident in which the Plaintiff Sarojak felt sexually harassed during her employment with Metallics. See Sarojak Deposition at p. 38.

Second, with respect to its severity, the portion of the skit the Plaintiff Sarojak found to be offensive lasted only four (4) seconds. See Videotape at 00:25:04 to 00:25:08. Mr. Mola placed a Scooby-Doo that was bouncing up and down on a pogo stick on back of the pink bounding bunny on the table, one of the other individuals placed the other Scooby Doo in front of the pink bunny,[13] and the stuffed animals then jumped up and down simultaneously.[14]

The Plaintiff Sarojak has produced no evidence to show that this portion of the skit was directed at her, much less that it was based upon her gender. Further, during this

---

[11] Although the Plaintiff Sarojak alleges in the Amended Complaint that the skit was racially charged (Amended Complaint at ¶ 22) she does not allege racial harassment or discrimination as a cause of action. Indeed, other than the fact that the skit involved two African American males and herself, a white female, the Plaintiff Sarojak provided no evidence to support any claim that the skit was "racially charged."

[12] The Plaintiff Sarojak appears to be laughing during this skit, belying any contention that she found the skit to be offensive. See Videotape 00:25:04 to 00:25:08.

[13] The pink bunny had been placed there by the Plaintiff Sarojak, but one of the African American individuals turned it on. See Videotape.

[14] It is clear from the videotape that this skit was staged for the benefit of the sales meeting and was not directed toward the Plaintiff Sarojak as evidenced by the fact that during the skit, neither Mr. Mola or either of the two males is looking at, touching, or speaking to the Plaintiff Sarojak, but rather are looking at the stuffed animals on the table. See Videotape 00:25:04 to 00:25:08.

four seconds, the Plaintiff Sarojak was standing behind the two individuals, who she considered her friends and with whom she admits to being comfortable with,[15] on either side of her. She did not touch the bunny or the two individuals, nor did anyone touch her. See Videotape at 00:25:04 to 00:25:08. Further, no one threatened the Plaintiff Sarojak or made any comments to the Plaintiff Sarojak, sexual or otherwise, during this portion or any other portion of the skit. See Videotape.

In sum, this single isolated incident, which involves no touching of the Plaintiff Sarojak, lasts four seconds (4) long and focuses on three stuffed animals, did not as a matter of law alter the conditions of the Plaintiff Sarojak's working environment and is simply not severe enough to create a hostile environment. See Ocheltree v. Scollon Productions, Inc., 308 F. 3d 351, 359-360 (4th Cir. 2002)(Court held that a vulgar song sung to the Plaintiff and employees pretending to perform oral sex and other sexual acts on a mannequin were not so severe or pervasive to have altered the terms of the employee's employment.)

Thus, the Defendant Metallics in entitled to summary judgment as to Counts One and Two of the Plaintiff Sarojak's Amended Complaint.

**2.    The Defendants Are Entitled to Summary Judgment On Counts Three And Four Of The Complaint Alleging Retaliation Since The Plaintiff Cannot Show She Suffered Any Adverse Employment Action And/Or That There Exists A Causal Connection Between Any Alleged Adverse Employment Action And Her Alleged Protected Activity.**

A prima facie case of retaliation under Title VII[16] and the CFEPA requires proof that (1) the plaintiff engaged in protected activity under these statutes; (2) that the

---

[15] The Plaintiff Sarojak was also comfortable with the Scooby Doos. See Sarojak Deposition at p. 59.
[16] The elements of a prima facie case are the same under Title VII and the Connecticut Fair Employment Practices Act.

employer was aware of the plaintiff's participation in the protected activity; (3) that the plaintiff was subject to an adverse employment action; and (4) a causal connection between the protected activity and the adverse action taken.  O'Bar v. Borough of Naugatuck, 260 F. Supp. 2d 514, 516 (D. Conn. 2003); Raniola v. Bratton, 243 F. 3d 610, 634 (2d Cir. 2001).

The Plaintiff Sarojak cannot prevail upon her claim of retaliation because, as a matter of law, the incidents which she claims were retaliatory do not amount to adverse employment action and/or no causal connection can be shown between her complaint regarding the skit and the alleged adverse action taken by the Defendants.

The actions by the Defendants which the Plaintiff Sarojak contends was retaliatory is: (1) the April 12, 2003 counseling memo for excessive personal phone calls (Amended Complaint at ¶ 28); (2) her reassignment to a smaller office away from her colleagues (Amended Complaint at ¶ 30); and (3) her termination on April 20, 2001 (Amended Complaint at ¶ 32.

The first two actions as not sufficient as matter of law to amount to adverse employment actions. An adverse employment action is defined as a "materially **adverse** change in the terms, privileges, duration and conditions of employment**."** Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) (internal quotations omitted); see also Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997); Dortz v. City of New York, 904 F. Supp. 127, 156 (S.D.N.Y. 1995); McKenney v. New York City Off-Track Betting Corp., 903 F. Supp. 619, 623 (S.D.N.Y. 1995).  An "adverse employment action" is one which is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya v. New York City Bd. of Education, 202 F. 3d 636, 640 (2d Cir. 2000).

Examples of materially adverse employment actions include…a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices…unique to a particular situation."  Id.

With respect to the counseling memo issued on April 12, 2003, the Plaintiff Sarojak did not receive any decrease in pay and/or benefits as a result thereof and thus as a matter of law this action does not constitute and adverse employment action. "[C]ourts in the Second Circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as decrease in pay or being on probation."  Honey v. Rockland, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002); Stembridge v. City of New York, 88 F. Supp. 2d 276 (S.D.N.Y. 2000)(no actionable harm where "reprimand contained a warning that repetition of improper behavior could result in disciplinary action but contained no indication of any planned discipline or further action"). A "notice of discipline" or a "counseling memo" that does not create a materially adverse change in working conditions is insufficient as a matter of law to constitute an adverse employment action. Weeks v. New York State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001).

Second, the Plaintiff Sarojak reassignment to another office likewise does not amount to an adverse employment action.  Specifically, the Plaintiff Sarojak's new office was ten (10) to twenty (20) feet across the hall from her old office, it was still in the area of the managers at Metallics, it was twenty (20) or thirty (30) feet from the President of the company, and the Plaintiff Sarojak still had a computer and a phone and could still

communicate with co-workers.[17]  See Sarojak Deposition at pp. 72-74, 79.  Further, and

most importantly, the Plaintiff Sarojak admits that the move did not affect her job!  See

Sarojak Deposition at p. 79.

     *Assuming arguendo* that the above actions do constitute adverse employment

actions, the Plaintiff Sarojak cannot show any causal connection between these actions

and her complaint regarding the skit.  First, with respect to the counseling memo

regarding excessive use of personal phone calls, the evidence shows that this memo had

no connection to her complaint whatsoever.  Specifically, on May 3, 2000 and again on

August 18, 2000 the Defendant Metallics issued memos reminding employees that no

personal calls were to be made or received during company business hours, except for

emergency situations and further that continuing violations of the policy could result in

disciplinary action.  See Memos dated May 3, 2000 and August 18, 2000 attached hereto

as Exhibits 4 & 5; Paladino Aff. at ¶ 12; Sarojak Deposition at pp. 65-67.   The Plaintiff

Sarojak admitted that she received these memos. See Sarojak Deposition at pp 65-67.

The Plaintiff Sarojak admits making personal calls during her employment with Metallics

(Sarojak Deposition at p. 66) and, consistent with the Defendant Metallics' prior memos

on May 3, 2000 and August 13, 2000, on April 12, the Defendant Metallics provided

counseling to her for excessive use of those personal calls.

     Second, with respect to the reassignment of the Plaintiff Sarojak to a new office,

again there is no evidence connecting this action to the Plaintiff Sarojak's complaint

regarding the skit.  Instead, the record evidence shows that this action was undertaken to

provide Mr. Friedli, who had taken over the purchasing department of which she was a

---

[17] This deposition testimony by the Plaintiff Sarojak contradicts her assertion in paragraph 30 of the Amended Complaint in which she contends that she was "reassigned to a smaller office away from her colleagues."  See Amended Complaint at ¶ 30.

part, with an office. Again, this move did not affect the Plaintiff Sarojak's job.  <u>See</u>

Sarojak Deposition at p. 79.

Third, with respect to the Plaintiff Sarojak's job elimination, the Plaintiff Sarojak

has produced no evidence to establish any causal connection between the elimination of

her job and her complaint regarding the skit. Instead, the undisputed evidence shows that

the Plaintiff Sarojak's position was eliminated as a result of Mr. Friedli's promotion

during the restructuring of the purchasing department which was necessitated as a result

of a significant decrease in sale.  <u>See</u> Paladino Aff. at  ¶¶ 44-48, 55.

Finally, *even assuming* the Plaintiff Sarojak can show that the above actions

somehow constitute retaliation, she has produced no evidence to show that these actions

were done with malice, fraud and/or oppression with the intent to injure her thereby

entitling her to punitive damages as alleged in Count Four.  The undisputed evidence

shows lack of fraud or malice in that with respect to the counseling and the reassignment

to another office she did not receive any decrease in pay and her job remained the same.

Further, with respect to the elimination of her job, the undisputed evidence shows that the

Plaintiff Sarojak received one week's severance pay, conduct which is inconsistent with

malice and/or an intent to injure the Plaintiff Sarojak.

Thus, the undisputed facts show that the Defendant Metallics is entitled to

judgment as a matter of law on Count Three and Counts Four.

**3.      <u>The Defendants Are Entitled to Summary Judgment On Count Five Of The Plaintiff's Complaint Alleging Intentional Infliction Of Emotional Distress Since The Plaintiff Sarojak Cannot Establish That The Defendants Conduct Was Extreme And Outrageous Or That She Suffered Extreme Emotional Distress.</u>**

To prevail upon a claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.)   Appleton v. Board of Education, 254 Conn. 205, 210 (2000).   Whether the alleged misconduct is sufficient to satisfy these elements is initially a question of law for the court. Grossman v. Computer Curriculum, 131 F. Supp. 2d 299, 310 (D. Conn. 2000).  Only where reasonable minds can differ does it become an issue for the jury.  Reed v. Signode Corporation, 652 F.Supp.129, 137 (D.Conn.1986); 1 Restatement (Second), Torts §46, comment (h) (on the issue of extreme and outrageous conduct) and comment (j) (on the issue of severe emotional distress)." Mellaly v. Eastman Kodak Co., 42 Conn.Sup. 17, 18-19 (1991)(Berdon, J.).

The Connecticut Supreme Court has set forth the liability standard for claims of intentional infliction of emotional distress:

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . .  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

(Citations omitted, internal quotation marks omitted.)  Appleton v. Board of Education, 254 Conn. 210-11 (2000).

The Connecticut District Court has defined what constitutes extreme or outrageous conduct in the employment context as follows:

> An employer's adverse yet routine employment action, **even if improperly motivated**, does not constitute extreme and outrageous behavior when the employer does not conduct the action in an egregious and oppressive manner.  See, e.g., Hill v. Pinkerton Security & Investigation Services, Inc., 977 F. Supp. 148, 160 (D.Conn. 1997) (including paying an African-American female less money than her counterparts and disciplining, reprimanding, and transferring plaintiff to two other locations in response to her wage investigations); White v. Martin, 23 F. Supp.2d 203, 208 (D.Conn. 1998), aff'd, 198 F.3d 235 (2d Cir. 1999)(employer's alleged discrimination, denial of a promotion, discipline, and harassment based on plaintiff's gender not extreme or outrageous).

> In addition to routine employment actions, Connecticut courts hold that insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress. . . .

(Citations omitted.)  Miner v. Town of Cheshire, 126 F.Supp.3d 184 (D.Conn. 2000).

In Ericson v. City of Meriden, 113 F. Supp.2d 276, 292 (D. Conn. 2000), the Court determined that the plaintiff had failed to allege any conduct so egregious or oppressive as to rise to the level of extreme and outrageous conduct.  In that case, the plaintiff's co-workers were viewing a videotape with sexual content during working hours.  While viewing the videotape, the co-workers teased the plaintiff for blushing.  Id. The plaintiff also subsequently suffered retaliatory conduct in the form of a job transfer to an undesirable location.  Id.  The Court ruled that, if these allegations were proven, these actions may be offensive, but they cannot be said to be extreme or outrageous or utterly intolerable by society.  Id.

The Plaintiff Sarojak herein contends that the Defendant Mola "turned a relatively harmless situation into a sexually and racially charged skit "(Amended Complaint at ¶

22), and this conduct was extreme and outrageous.  <u>See</u> Amended Complaint at ¶ 59.  She further contends that the Defendants' conduct "in refusing to take action to protect plaintiff …from sexual harassment, refusing to take action to protect plaintiff from Mr. Mola's…conduct, reprimanding plaintiff for asserting her rights… and terminating [her] employment….[is] extreme and outrageous.  <u>See</u> Amended Complaint at ¶ 60.

However, neither Mr. Mola's or the Defendant Metallics' conduct may reasonably be regarded as outrageous. Even viewing Mr. Mola's conduct in a light most favorable to the Plaintiff Sarojak, it is clear that his conduct hardly exceeded all bounds usually tolerated by decent society.  The skit lasted four (4) seconds long.  <u>See</u> Videotape at 00:25:04 to 00:25:08. The Defendant Mola placed one Scooby-Doo which was bouncing up and down on a pogo stick in back of the pink hopping bunny and one of the other individuals placed the other Scooby Doo in front of the pink hopping bunny and the animals thereafter hopped up and down together.  However, the Plaintiff Sarojak was not touched nor is she touching the other individuals involved in the skit and no one made any comments to her during the skit, sexual or otherwise.  <u>See</u> Videotape at 00:25:04 to 00:25:08. Furthermore, the Plaintiff Sarojak acknowledged that she was comfortable with the Scooby Doos and with the two individuals involved in the skit with her, and, by her own admission, this is the only incident in which she felt sexually harassed during her employment with Metallics.  Finally, after she complained of the skit, it is <u>undisputed</u> that an apology was issued on April 3, 2001. <u>See</u> Amended Complaint at ¶ 27; Paladino Aff. at ¶ 21; Exhibit 7.

Under these circumstances, although the Plaintiff Sarojak may have found Mr. Mola's actions in the skit to be offensive, reasonable minds cannot differ that such actions

by Mr. Mola were not outrageous nor did they exceed all bounds usually tolerated by decent society. See Ericson, 133 F. Supp 3d. at 292.

Further, to the extent the Plaintiff Sarojak contends that the counseling memo and her reassignment to a new office were likewise outrageous, such actions were not undertaken in an egregious or oppressive manner. She admits that she made personal calls and admits that she had received the two prior memos relating to excessive personal phone calls in which employees were warned that disciplinary action could result. See Sarojak Deposition at pp. 65-68. Further, it is undisputed that the Plaintiff Sarojak received no decrease in pay and/or benefits as a result of this counseling. See Paladino Aff. at ¶ 27. Again, reasonable minds cannot differ on reaching the conclusion that the issuance of the counseling memo to the Plaintiff Sarojak was not extreme and outrageous.

As to the reassignment of the Plaintiff Sarojak to a new office, the record evidence reflects that the move did not affect the Plaintiff Sarojak's job. See Sarojak Deposition at p. 79. Her new office was ten (10) to twenty (20) feet across the hall from her old office, it was still in the area of the managers at Metallics, it was twenty (20) or thirty (30) feet from the President of the company, and the Plaintiff Sarojak still had a computer and a phone and could still communicate with co-workers. See Sarojak Deposition at pp. 72-74, 79. Thus, this reassignment by the Defendant Metallics cannot be said to be extreme and outrageous and the Plaintiff Sarojak's claim must fail.

Lastly, the Defendant Metallics conduct in the termination process did not rise to the level of extreme and outrageous. It is undisputed that the Judy Couture, the Vice President of Human Resources met with the Plaintiff Sarojak on April 20, 2001 and informed her that her position was being eliminated. See Sarojak Deposition at p. 80;

Paladino Aff. at ¶ 29. By the Plaintiff Sarojak's own admission, Judy Couture treated the Plaintiff Sarojak professionally when she advised the Plaintiff Sarojak of the elimination of her position. <u>See</u> Sarojak Deposition at p. 88. Further, during this meeting, the Plaintiff Sarojak was given one week's severance pay. After being informed of her job elimination, the Plaintiff Sarojak then went to her office, packed her things and left. Such conduct by the Defendant Metallics as a matter of law is not extreme and outrageous.

*Assuming arguendo* that the Defendants' conduct was extreme and outrageous, the undisputed facts show that the Plaintiff Sarojak did not suffer severe distress as a result thereof. The Plaintiff Sarojak admits that she has not seen a psychologist for stress-related issues. <u>See</u> Sarojak Deposition at p. 95. The Plaintiff Sarojak contends that she saw her physician Dr. Chyun shortly after her employment with Metallics ended for stress related issues. <u>See</u> Sarojak Deposition at p. 95. She further contends that he prescribed a sleeping pill for her stress <u>See</u> Sarojak Deposition at p. 86. However, the record evidence shows that the Plaintiff Sarojak was prescribed a sleeping pill called Ambien by Dr. Chyun <u>for the first time</u> on October 28, 2002 which is well over a year and a half after the alleged conduct causing her distress occurred! <u>See</u> Sarojak Deposition at pp. 86 and 98; Listing of Prescriptions Filled at CVS from July 11, 2000 to March 2004 attached hereto as Exhibit 10.[18]

Based upon these facts, it is clear that the Plaintiff Sarojak cannot establish that she suffered severe emotional distress.

---

[18] During this year and a half between July of 2001 and December 2001, the Plaintiff Sarojak was not feeling well and had pains in her stomach, and, in December, 2001 had surgery to remove her ovary and fallopian tube. <u>See</u> Sarojak Deposition at pp. 109-112.

Thus, the Defendants are entitled to judgment as a matter of law on Count Five of the Plaintiff Sarojak's amended complaint.

4.     **The Defendants Are Entitled to Summary Judgment As To Count Six Alleging Negligent Infliction Of Emotional Distress Since As A Matter of Law The Defendant's Conduct In the Termination Process was Not Outrageous.**

In the employment context, a claim for negligent infliction of emotional distress arises only when it is based upon unreasonable conduct of the defendant during the termination process. Perodeau v. City of Hartford, 250 Conn. 729, 744, 762-63 (2002) Further, the unreasonable conduct in the termination process must be "done in an inconsiderate, humiliating or embarrassing manner." Schug v. Pyne-Davidson Co., No. 3:99CV1493 (CFD), 2001 U.S. Dist. Lexis 21246, at *24-25 (D. Conn., Dec. 10, 2001) *see also* Malik v. Carrier Corp., 986 F.Supp. 86, 92 (D.Conn.1997)( The employer's conduct during the termination process must be egregious, outrageous, or "done in an inconsiderate, humiliating or embarrassing manner. . . ." )

In the instant case, the undisputed facts show that the Plaintiff's termination was not outrageous or done in an inconsiderate, humiliating or embarrassing manner. The Plaintiff Sarojak's position and her prior supervisor Mr. Robert Sobczak's position were eliminated due to a restructuring caused by a decrease in sales.  See Paladino Aff. at ¶¶ 21-25,28-29.

Secondly, with respect to the termination itself, it is undisputed that the Judy Couture, the Vice President of Human Resources met with the Plaintiff Sarojak on April 20, 2001 and informed her that her position was being eliminated. See Sarojak Deposition at p. 80; Paladino Aff. at ¶ 29. By the Plaintiff Sarojak's own admission, Judy

24

Couture treated the Plaintiff Sarojak professionally when she advised the Plaintiff Sarojak of the elimination of her position.  See Sarojak Deposition at p. 88. Further, during this meeting, the Plaintiff Sarojak was given one week's severance pay. After being informed of her job elimination, the Plaintiff Sarojak then went to her office, packed her things and left.

These undisputed facts, clearly demonstrate that the Defendants did not engage in unreasonable conduct in the termination process and thus, as a matter of law, the Defendants are entitled to summary judgment on Count Six as well. See Rose v. Panolam Industries International Incorporated, 301 F. Supp. 239 (D.Conn. 2004)(Court granted summary judgment on negligent infliction claim where the Plaintiff met with the Corporate Human Resource Manager who notified her that her position was being terminated for poor performance in a polite, professional manner, and was thereafter walked to her desk to collect items and escorted to main entrance and left.)

### 5.     The Defendants Are Entitled to Summary Judgment As To The Seventh Count Alleging Breach of Contract Since The Plaintiff Admitted That Her Employment With Metallics Was Not Covered By A Contract.

In the Seventh Count, the Plaintiff Sarojak contends that during her employment there existed an oral contract of employment under which it was implicitly agreed that she would be terminated only for cause and that the Defendant breached their express and implied contractual commitments by terminating her without cause.

Under Connecticut law, "[t]o service a motion for summary judgment, the plaintiff has the burden of presenting evidence that the defendant has agreed to

some form of contractual commitment.  A contractual promise cannot be created by plucking phrases out of context there must be a meeting of the minds of the parties." <u>Rose v. Panolam Industries International Incorporated</u>, 301 F. Supp. 239, 245 (D.Conn. 2004) citing <u>Burnham v. Karl & Gelb, P.C.</u>, 50 Conn. App. 385, 388-389, 717 A.2d 811 (1998).

The Plaintiff Sarojak has produced no evidence of any contract, express or implied, oral or written, under which the Plaintiff Sarojak's employment would only be terminated for cause.  In fact, the Plaintiff Sarojak admitted during her deposition that her employment with Metallics **was not covered by a contract of employment**. <u>See</u> Sarojak Deposition at p. 4. (Emphasis added.)

Instead, the Plaintiff Sarojak received an employee manual dated July 23, 1999 which governed the terms and conditions of her employment.  <u>See</u> July 23, 1999 Manual attached hereto as Exhibit 3; Sarojak Deposition at p. 33. That manual explicitly states:

> This handbook….IS NOT AN EMPLOYMENT CONTRACT AND IS NOT INTENDED TO CREATE CONTRACTUAL OBLIGATIONS OF ANY KIND.  **NEITHER THE EMPLOYEE NOT THE METALLCIS GROUP IS BOUND TO CONTINUE THE EMPLOYMENT RELATIONSHIP IF EITHER CHOOSES, AT ITS WILL, TO END THE RELATIONSHIP AT ANY TIME**.
>
> **WE VIEW** HISTORICALLY THESE PAST 40 YEARS THAT **ALL EMPLOYEES ARE EMPLOYEES-AT-WILL**.  IN THE EVENT A CONTRACT WITH AN EMPLOYEE IS NECESSARY IT WILL BECOME A PROFESSIONAL, LEGAL DOCUMENT, WRITTEN BY OUR ATTORNEYS AND SIGNED BY THE PRESIDENT/CHAIRMAN OF THE BOARD AND THE EMPLOYEE.

<u>See</u> July 23, 1999 Manual at p. 5. (Emphasis added.)

Thus, the undisputed facts show that Plaintiff Sarojak was an at-will employee of Metallics who was terminable at will, and, by her own admission was not covered by a contract of employment thereby entitling the Defendant Metallics to judgment as a matter of law on Count Seven.

> **6.** **The Defendants Are Entitled To Summary Judgment As To Count Eight Alleging Breach Of The Implied Covenant Of Good Faith And Fair Dealing Since The Plaintiff Was Terminable At Will And The Plaintiff Sarojak Has An Adequate Statutory Remedy Available.**

Under Connecticut law, "every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231, 238 (1992). The implied covenant of good faith and fair dealing is not an independent requirement, but instead arises from and is depend upon the existence of an enforceable contract. Omega Engineering, Inc. v. Eastman Kodak Co., 908 F. Supp. 1084, 1091 (D. Conn. 1995) *see also* Citizens Communications Co. v. Trustmark Ins., 303 F. Supp. 197, 207 (D. Conn 2004)("The existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing.")

In the instant case, as set forth above under Section B.5., the Plaintiff Sarojak admits she had no contract covering her employment with Metallics. Further, the employment manual covering the terms and conditions of her employment clearly stated that "all employees are terminable at will." See July 23, 1999 Manual at p. 5.

"To establish a claim for breach of an implied covenant of good faith and fair dealing where the employment is terminable at will, an employee must establish that her dismissal was for a demonstrably improper reason, the impropriety of which is derived

from a violation of some important public policy." Johnson v. Chesebrough-Ponds, 918 F. Supp. 543, 550 n.4 (D. Conn. 1996).

"A plaintiff bringing a claim for violation of the implied covenant of good faith and fair dealing must also establish that he does not otherwise have an adequate means of vindicating that public policy." Kull v. Davidoff of Geneva (NY), Inc., 2004 U.S. Lexis 11575,  01 CV 4831 * 45 (S.D.N.Y. June 22, 2004). "[I]f there is an adequate remedy under statutory law, then the claim cannot stand separately." Id.

In the instant case, the Plaintiff Sarojak alleges in Count Eight that "from the time the plaintiff complained of Mr. Mola's sexual harassment, defendants have breached the covenant of good faith and fair dealing by issuing unwarranted and unjustified reprimands, ostracizing her from her colleagues and finally terminating her employment under the guise of job elimination." See Amended Complaint at   77.  This claim is virtually identical to the claim of unlawful retaliation under Title VII as set forth in Counts Four and Five.  Thus, since an adequate remedy is available under Title VII, this claim is entirely duplicative and the Defendant is entitled to summary judgment on Count Eight.

## III.    **CONCLUSION**

For all the above referenced reasons, it is clear that there are no genuine issue of material fact in dispute and the Defendants respectfully requested that summary judgment be entered in their favor as to all counts of the Plaintiff Sarojak's Amended Complaint.

THE DEFENDANTS,
THE METALLICS GROUP D/B/A
METALLICS, INC. AND
F. MICHAEL MOLA

_____
Holly Quackenbush Darin  (ct10183)
Ryan & Ryan, LLC
900 Chapel Street, Suite 621
New Haven, CT  06510
(203) 752-9794
-Its Attorneys-

## **CERTIFICATION**

The undersigned hereby certifies that the foregoing was mailed, first class, postage prepaid, this 13th day of August 2004 to all counsel and pro se parties of record as listed below:

Fred Frangie
Robert Fortgang
Robert Fortgang Associates
573 Hopmeadow Street
Simsbury, Connecticut 06070

_____
Holly Quackenbush Darin