UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY SAROJAK | CIVIL ACTION NO. |
| PLAINTIFF, | 3:03CV1050 (DJS) |
| V. | |
| THE METALLICS GROUP D/B/A METALLICS, INC. and F. MICHAEL MOLA | |
| | AUGUST 13, 2004 |
| DEFENDANTS. | |

**LOCAL RULE 56(a)1 STATEMENT**

1. On December 15, 1999, the Plaintiff, Mary Sarojak (hereinafter "Plaintiff Sarojak"), commenced employment with the Defendant Metallics Group d/b/a Metallics, Inc. (hereinafter "Defendant Metallics") as a Purchasing Agent. See Affidavit of Richard Paladino attached hereto as Exhibit 1 (hereinafter Paladino Aff.") at ¶ 5.

2. The Defendant F. Michael Mola (hereinafter "Defendant Mola") is the Chairman of the Defendant Metallics. See Paladino Aff. at ¶ 6.

3. The Plaintiff Sarojak's supervisor during her employment up to April 3, 2001 was Mr. Robert Sobczak who was Vice President of Operations. Mr. Sobczak was responsible for overseeing the purchasing department in addition to other non-purchasing department duties. See Excerpts from Deposition of Plaintiff Sarojak attached hereto as Exhibit 2 (hereinafter "Sarojak Deposition") at pp.60 & 71; Paladino Aff. at ¶ 7.

4. The Plaintiff Sarojak's employment with the Defendant Metallics was not covered by a contract of employment. See Sarojak Deposition at p. 4.

    5. Rather, the Plaintiff Sarojak received a policy manual dated July 23, 1999 which covered the terms and conditions of her employment.  <u>See</u> Deposition at p. 33; July 23, 1999 Manual attached hereto as Exhibit 3.

    6. The July 23, 1999 manual received by the Plaintiff Sarojak explicitly states:

> This handbook….IS NOT AN EMPLOYMENT CONTRACT AND IS NOT INTENDED TO CREATE CONTRACTUAL OBLIGATIONS OF ANY KIND.  NEITHER THE EMPLOYEE NOT THE METALLCIS GROUP IS BOUND TO CONTINUE THE EMPLOYMENT RELATIONSHIP IF EITHER CHOOSES, AT ITS WILL, TO END THE RELATIONSHIP AT ANY TIME.
>
> WE VIEW HISTORICALLY THESE PAST 40 YEARS THAT ALL EMPLOYEES ARE EMPLOYEES-AT-WILL.  IN THE EVENT A CONTRACT WITH AN EMPLOYEE IS NECESSARY IT WILL BECOME A PROFESSIONAL, LEGAL DOCUMENT, WRITTEN BY OUR ATTORNEYS AND SIGNED BY THE PRESIDENT/CHAIRMAN OF THE BOARD AND THE EMPLOYEE.

<u>See</u> July 23, 1999 Manual at p. 5.

    7. The July 23, 1999 manual also contains the following provision concerning personal phone calls:

> Personal Telephone Calls
>
> The company understands that there may be occasional instances when you need to communicate with family or a service organization during the workday.  However, because of the nature of your work, only emergency incoming telephone calls will be passed through to employees.
>
> Messages will be taken for other calls and distributed at break time.  Critical calls may be returned at lunch time or during the 20 minute break.  Company phones are not to be used for social conversations.  Employees using company time and company phones to carry on lengthy, non-business related conversations with other employees in the plant they work in, will be subject to disciplinary action.

<u>See</u> July 23, 1999 Manual attached hereto as Exhibit 3 at p. 27

8. On May 3, 2000 and again on August 18, 2000 memos were issued reminding employees that no personal calls were to be made or received during company business hours, except for emergency situations and further that continuing violations of the policy could result in disciplinary action. See Memos dated May 3, 2000 and August 18, 2000 attached hereto as Exhibits 4 & 5; Paladino Aff. at ¶ 12; Sarojak Deposition at pp. 65-67.

9. The Plaintiff Sarojak admits that she received these memos. See Sarojak Deposition at pp 65-67.

10. On March 22, 2001, a National Sales Meeting was held at Metallics for the company's sales representatives located throughout the country. See Amended Complaint at ¶ 16 ; Paladino Aff. at ¶ 13.

11. On March 21, 2001, the Defendant Mola advised the Plaintiff Sarojak of an office skit which was to be performed on March 22, 2001 as part of the sales meeting. See Sarojak Deposition at pp.35-36; Amended Complaint at ¶ 18.

12. The Plaintiff Sarojak had no problem with being part of the skit and agreed to take part in it. See Sarojak Deposition at p. 36.

13. On March 21, 2001, a rehearsal of the skit was conducted by the Defendant Mola. See Amended Complaint at ¶ 20; Sarojak Deposition at p. 41.

14. The Defendant Mola explained to the Plaintiff Sarojak, and the other employees who were going to take part in the skit, that there were going to be skits performed at the sales meetings and that three (3) people would be involved in each skit. See Sarojak Deposition at p. 39.

15. With respect to the individuals involved in the first skit to be performed, including the Plaintiff Sarojak, the Defendant Mola told them that he was going to give a

speech to the sales representatives and they each would be holding a bunny which would be called the "Metallics Playboy Bunnies."  <u>See</u> Sarojak Deposition at pp. 39-40.

16.  The Defendant Mola then instructed the individuals involved in the first skit to place their bunnies on the table and turn them on and watch the bunnies bounce around. <u>See</u> Deposition of Sarojack at pp. 46-47.

17. The Plaintiff Sarojak thought the skit was silly and laughed and joked about the skit when the rehearsal was done.  <u>See</u> Sarojak Deposition at p. 41.

18.  On March 22, 2001, according to the Plaintiff Sarojak's version of the skit, she was handed a white bunny which was about twelve inches tall and hopped around and the other two (2) females in the skit were given pink bunnies.  <u>See</u> Sarojak Deposition at   p. 42.

19.  A videotape of the sales meeting, including the skits was taken by the Defendant Metallics.  <u>See</u> Paladino Aff. at ¶14; Videotape attached hereto as Exhibit 6.

20.  The videotape shows that Plaintiff Sarojak walked out first holding a bunny behind her back followed by <u>three</u> (3) other females doing the same and holding bunnies behind their respective backs.  <u>See</u> Videotape at 00:22:55.

21.  All four (4) females placed their bunnies in front of them.  The Plaintiff's bunny was pink, the individual to her right had a white bunny, the next individual had a pink bunny and the last individual had a pink bunny.  Upon placing the bunnies on the table the four (4) females turned the bunnies on and the bunnies hopped up and down and music emanated from them. The entire skit lasted less than a minute and the Plaintiff Sarojak was laughing throughout the skit. <u>See</u> Videotape at  00:22:59 to 00:22:19.

22. The Plaintiff Sarojak did not find this skit offensive. See Sarojak Deposition at p. 47.

23. The Plaintiff did not perform in the second skit which was performed by two (2) African American females in the order processing department. However, in this skit the females held stuffed bears and the Defendant Mola, referring to the stuffed bears, comments, "Notice there's an order in their hand." The two (2) African American females put their stuffed animals on the table in front of them, turned them on, danced from side to side in response to the music which came from the bears and were laughing. See Videotape at 00:23:44 to 00:24:14.

24. The Plaintiff Sarojak thereafter took part in another skit that day with two African American males named Andre Evans and Charles Gibson, both of whom she considered her friends. See Sarojak Deposition at p. 28, 38. According to the Plaintiff, the Defendant Mola gave Mr. Gibson and Mr. Evans out Scooby-Doos holding jack-hammers. See Sarojak Deposition at pp. 42-43. The videotape reflects that the Scooby-Doos were not holding jack-hammers but were standing on pogo-sticks. See Videotape.

25. Then, the Plaintiff Sarojak says that she walked out with both Andre Evans and Charles Gibson and they were supposed to line up their stuffed animals on the table and she was to line up her bunny on the table between the two Scooby-Doos placed there by Evans and Gibson respectively. See Sarojak Deposition at p. 52.

26. The actual videotape shows that the third skit begins with the Defendant Mola stating, "We have a couple of our Top Dogs coming out here now…what we've got is our Plant Manager Andre Evans and with him Charlie Gibson ..so let's have the "Big Dogs - come on." See Videotape at 24:19 to 24:32.

27. Thereafter, contrary to the Plaintiff Sarojak's version of the skit, the two (2) men appeared without the Plaintiff Sarojak, holding Scooby-Doos behind their back. One of the individuals then said, "We are representatives from the Shipping Department and we would like to let you guys know that when we get your order we jump." See Videotape at 00:24:33 to 00:24:46.

28. The two (2) men thereafter placed the Scooby Doos on the table. Mr. Evans then said, "May we have a bunny please" and the Plaintiff Sarojak came out and placed what appears to be a pink bunny on the table. See Videotape at 00:24:47 to 00:24:53.

29. Once the Plaintiff Sarojak placed her bunny on the table Mr. Evans and Mr. Gibson turned on their Scooby-Doos and the Scooby-Doos jumped up and down on their pogo sticks. Mr. Evans then turned on the Plaintiff Sarojak's bunny so that it hopped. See Videotape at 00:24:54; Sarojak Deposition at pp. 54-55.

30. Although the Plaintiff Sarojak does not recall stepping back from the table, the tape clearly shows that after placing the bunny on the table, she then backed up behind Mr. Evans and Mr. Gibson. After backing away from the table, the Plaintiff Sarojak's shoulders were not touching either Mr. Evans or Mr. Gibson. See Sarojak Deposition at p. 53; Videotape at 00:24:55.

31. The Plaintiff Sarojak thought this part of the skit was silly also. See Sarojak Deposition at p. 54.

32. Thereafter, the Defendant Mola took a Scooby-Doo and put it in behind the bunny and one of the other gentlemen, Mr. Evans, put the other Scooby-Doo in front of the bunny. See Sarojak Deposition at p. 55; Videotape at 00:25:04 to 00:25:08.

33. The Plaintiff Sarojak laughed after this was done as did Mr. Evans and Mr. Gibson. See Videotape at 00:25:04.

34. Although the Plaintiff Sarojak did not recall how long the Scooby-Doos were in front of and behind the bunny, the videotape reflects that it was approximately four (4) seconds. See Videotape at 00:25:04 to 00:25:08; Sarojak Deposition at p. 55.

35. After the animals stopped bouncing up and down and making noise, the Plaintiff Sarojak along with Mr. Evans and Mr. Gibson, picked up the stuffed animals and left the room. See Videotape at 00:25:16.

36. As previously mentioned, the Plaintiff Sarojak admits that she was friends with both Andre Evans and Charles Gibson, both of whom were African American and was not uncomfortable being in the skit with them. See Sarojak Deposition at pp. 38, 57, 58-59.

37. The Plaintiff Sarojak was also comfortable with the Scooby-Doos. See Sarojak Deposition at p. 59.

38. The four (4) second portion of the skit was the only incident during the Plaintiff Sarojak's employment with the Defendant Metallics in which she felt sexually harassed. See Sarojak Deposition at p. 59

39. At the time of the skit in March 2001 the Plaintiff Sarojak had only seen the Defendant Mola about four (4) times during her employment with Metallics. See Sarojak Deposition at p. 35.

40. After the skit, the Plaintiff Sarojak complained to her supervisor Robert Sobzcak and the next day asked him to discuss the incident with Judy Couture who was Vice President of Human Resources at that time. See Sarojak Deposition at p. 61.

41. The Plaintiff Sarojak thereafter met with Judy Couture and Richard Paladino, President of Metallics, and told them she wanted the Defendant Mola to apologize.  See Sarojak Deposition at pp. 62-63; Paladino Aff. at ¶¶ 17-18.

42.  Thereafter, on April 3, 2001, the Defendant Mola apologized on behalf of management to each participant that may have been upset about his/her participation in the skit.  See Amended Complaint at ¶ 27; Paladino Aff. at ¶ 21; April 3, 2001 Memo attached hereto as Exhibit 7.

43.  At the time of the April 3, 2001 apology, the Defendant Mola was part of the management team at the Defendant Metallics.  See Sarojak Deposition at p. 64.

44.  On the same day this apology was issued, Mr. Robert Friedli was promoted to the position of Director of Purchasing/Materials Management.  Mr. Friedli had been the Inventory Control Manager for the Defendant Metallics and its sister company, Avanti Screw, Inc. See Paladino Aff. at ¶ 21; Memo dated April 3, 2001 attached hereto as Exhibit 8.

45.  Prior to Mr. Friedli's promotion, the Defendant Metallics' sales had decreased significantly.  Specifically, the sales for the period ending April of 2000 were approximately $4,599,250, and the sales for the period ending April of 2001 were approximately $4,050,027, resulting in a decrease in sales of approximately $549,223.  See Paladino Aff. at ¶ 22.

46.  As a result of the decrease in sales, on March 15, 2001, five (5) employees were laid off in the packing area and between March 15, 2002 and May 20, 2001, thirteen (13) employees voluntarily separated employment with Metallics and were not replaced.  See Paladino Aff. at ¶ 23.

47. Mr. Friedli was promoted in an effort to further reduce costs by restructuring the purchasing department overseen by Robert Sobczak, which department included the Plaintiff Sarojak as purchasing agent, and to analyze and get control over Metallics' inventory situation. See Paladino Aff. at ¶ 24.

48. As part of Mr. Friedli's new duties as Director of Purchasing/Materials Management, he became responsible for overseeing the purchasing functions of both Metallics, Inc. and Avanti Screw, Inc. After Mr. Friedli's promotion, Mr. Sobczak did not have any responsibilities with Metallics' purchasing department. See Paladino Aff. at ¶ 25.

49. As a result of Mr. Friedli's promotion, the Plaintiff Sarojak was relocated to a new office across the hall and her new supervisor Mr. Friedli was moved into her old office. See Paladino Aff. at ¶ 26; Sarojak Deposition at p. 71.

50. The move did not affect the Plaintiff Sarojak's job. See Sarojak Deposition at p. 79.

51. The Plaintiff Sarojak's new office was ten (10) to twenty (20) feet across the hall from her old office, it was still in the area of the managers at Metallics, it was twenty (20) or thirty (30) feet from the President of the company, and the Plaintiff Sarojak still had a computer and a phone and could still communicate with co-workers. See Sarojak Deposition at pp. 72-74, 79.

52. On April 12, 2001 the Plaintiff Sarojak was counseled for excessive personal phone calls. See Sarojak Deposition at p. 68; Memo dated April 12, 2001 attached hereto as Exhibit 9; Paladino Aff. at ¶ 27.

9

53. The Plaintiff Sarojak received no decrease in pay and/or benefits as a result of this counseling. See Paladino Aff. at ¶ 27.

54. The Plaintiff Sarojak admits making personal phone calls while working at Metallics. See Sarojak Deposition at p. 66.

55. Shortly after Mr. Friedli's promotion on April 3, 2001, it became evident that he could perform all the functions of the purchasing department, including the functions of the Plaintiff Sarojak as purchasing agent, and a decision was made to simultaneously eliminate both the Plaintiff Sarojak's position as purchasing agent and Mr. Sobczak's position as Vice President of Operations. See Paladino Aff. at ¶ 28.

56. On April 20, 2001 the Plaintiff Sarojak was told by Judy Couture her position with Metallics was being eliminated and she was given one week's severance pay. See Sarojak Deposition at p. 80; Paladino Aff. at ¶ 29.

57. During this meeting, Judy Couture was professional and, after being told of the elimination of her position, the Plaintiff Sarojak went to her office, packed her things and left. See Sarojak Deposition at p. 88.

58. Mr. Sobzcak's position as Vice President of Operations was also eliminated the same day. See Paladino Aff at ¶ 29.

59. Mr. Friedli assumed all of the Plaintiff Sarojak's job functions and Mr. Sobczak's non-purchasing duties were assumed by Richard Paladino, President of Metallics, and Ms. Judith Couture, the Vice President of Human Resources. See Paladino Aff. at ¶ 28.

60. Since the Plaintiff Sarojak's position with Metallics was eliminated, she has not seen a psychologist for stress-related issues. See Sarojak Deposition at p. 95.

61. The Plaintiff Sarojak contends that she saw her physician Dr. Chyun shortly after her employment with Metallics ended for stress related issues. See Sarojak Deposition at p. 95.

62. The Plaintiff Sarojak also contends that Dr. Chyun prescribed a sleeping pill for her stress. See Sarojak Deposition at p. 86.

63. Between July of 2001 and December 2001 the Plaintiff Sarojak was not feeling well and had pains in her stomach and in December, 2001 had surgery to remove her ovary and fallopian tube. See Sarojak Deposition at pp. 109-112.

64. The Plaintiff Sarojak was prescribed a sleeping pill called Ambien by Dr. Chyun for the first time on October 28, 2002 and has not taken a sleeping pill since December, 2002. See Sarojak Deposition at pp. 86 and 98; Listing of Prescriptions Filled at CVS from July 11, 2000 to March 2004 attached hereto as Exhibit 10.

THE DEFENDANTS,
THE METALLICS GROUP D/B/A
METALLICS, INC. AND
F. MICHAEL MOLA

_____
William A. Ryan(ct15530)
Holly Quackenbush Darin  (ct10183)
Ryan & Ryan, LLC
900 Chapel Street, Suite 621
New Haven, CT  06510
(203) 752-9794
-Its Attorneys-

## **CERTIFICATION**

      The undersigned hereby certifies that the foregoing was mailed, first class, postage prepaid, this 13th day of August 2004 to all counsel and pro se parties of record as listed below:

Fred Frangie
Robert Fortgang
Robert Fortgang Associates
573 Hopmeadow Street
Simsbury, Connecticut 06070

                                                                                                    _____
                                                                                                    William A. Ryan